UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN CARNAZ HARDEN,

          Plaintiff,

v.

BARBARA HOOVER and
MICHAEL TOMASCZYK,

          Defendants.

_____/

Case No. 1:22-cv-1120

Hon. Jane M. Beckering

## REPORT AND RECOMMENDATION

       This is a civil rights action brought by plaintiff Justin Carnaz Harden, a prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. The alleged events occurred at the MDOC's Muskegon Correctional Facility (MCF). Plaintiff, through his attorney, has sued MCF medical providers Barbara Hoover and Michael Tomaszczyk. This matter is now before the Court on defendants' motion for summary judgment on the basis of exhaustion (ECF No. 38).

       **I.**     **The complaint**

       The Court summarized plaintiff's claims as follows:

       Plaintiff alleges that, on June 14, 2021, and September 9, 2021, Plaintiff had blood work drawn per request by non-party MCF Mental Health Providers. (Compl., ECF No. 1, PageID.2.) Plaintiff was not informed of the results; however, the laboratory reports indicate that Plaintiff's blood sugar levels were elevated to diabetic or pre-diabetic levels. (*Id.*) Plaintiff was not scheduled to be seen by a medical provider following these laboratory reports, and Plaintiff did not receive any medical treatment for his elevated blood sugar. (*Id.*)

       On March 23, 2022, "after seeking medical attention regarding genitourinary complaints," a blood draw was conducted, this time revealing that

Plaintiff had become diabetic. (*Id.*) Non-party medial [sic] provider Sarah Henson reviewed these results with Plaintiff and developed a treatment plan. (*Id.*) However, by this time, Plaintiff had developed Type II diabetes and diabetic neuropathy. (*Id.*, PageID.2–3.)

Plaintiff alleges that Defendants Hoover and Tomaszczyk were deliberately indifferent to Plaintiff's medical condition "when they failed to inform and discuss the results of the June 14, 2021, and September 9, 2021[,] blood draw[] . . ." or develop a treatment plan that would prevent further harm to Plaintiff. (*Id.*, PageID.3.) Defendant Hoover is listed as the "Provider" on the June 14, 2021, lab report, attached to Plaintiff's complaint as Exhibit A (ECF No. 1-2, PageID.10-13), while Defendant Tomaszczyk is listed as the "Provider" on the lab report dated September 9, 2021, attached to Plaintiff's complaint as Exhibit B (ECF No. 1-3, PageID.14-16). The grievance response, attached to Plaintiff's complaint as "Attachment A," indicates that neither Defendant was informed of the laboratory results ordered by the mental health providers. (ECF No. 1-5, PageID.23, 25.)

Based on the foregoing allegations, Plaintiff avers that Defendants Hoover and Tomaszczyk violated his rights under the Eighth Amendment. (*Id.*, PagID.4.) As relief, Plaintiff seeks a declaratory judgment and compensatory and punitive damages. (Compl., ECF No. 1, PageID.4.)

Opinion (ECF No. 6, PageID.50-51).

## II.    Motion for summary judgment

### A.    Standard of review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance

procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 1.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 2.    Discussion

Defendants have identified one grievance related to plaintiff's claim, MCF-22-04-0459-12Z ("459"). Defendants' Brief (ECF No. 38, PageID.215). This grievance listed an incident date of April 23, 2022, and stated as follows:

On or about 4-23-22, Grievant submitted a kite to Health Care requesting to know, 'why Grievant was not notified that several test indicated pre-diabetes?' Grievant has not received from Health Care an effective response.

Grievance 459 (ECF No. 21-1, PageID.125).

Defendants contend that the grievance is not properly exhausted because plaintiff did not name them in the grievance. Here, the grievance referred to a kite which plaintiff sent to "Health Care" on or about April 23, 2022. The grievance did not set out the "[d]ates, times, places and names of all those involved in the issue being grieved" as required by PD 03.02.130 ¶ S. However, the MDOC did not reject the grievance. Rather, respondents noted that "Description allowed response from record", performed an investigation and entered a decision partially resolving the matter. *Id*. The investigation stated:

Review of the EMR indicated the grievant had blood work drawn in both June and September 2021 as requested by the Mental Health Providers. The grievant's blood sugar was above 300 with each result and his Hgb A1C was 12.2 ln June of 2021. Those results were reviewed by the Mental Health Providers. The grievant had submitted a Health Care Request (HCR) on 03-15-22 requesting a prostate check and complaints of frequent urination at night. He was seen by nursing on 03-16-22 where his blood sugar was 330. He was referred to the Medical Provider (MP). He saw the MP on 3-11-22 where additioan [sic] labs were ordered along with medication and diabetic education was provided. He saw Mp again on 3-28-22 where his most recent lab results were reviewed, routine blood sugar testing was ordered along with a Dietary consult and additional education was provided.

PageID.126. The "Decision Summary" stated:

Labs were ordered and reviewed by the Mental Health Provider. The Medical Provider was not notified to review them. Thank you for bringing this to our attention. The grievance will be administratively reviewed and addressed as indicated. Grievance partially resolved.

*Id*.

Plaintiff appealed at Step II stating, "They have not admitted to there [sic] neglect and wrong doing.  This issue is not partially resolved."  PageID.123.  The grievance was resolved at Step II with the following explanation:

> Grievant claims that Health Care staff subjected him to deliberate indifference by failing to inform him that previously completed blood tests indicated that he had prediabetes.

> Date of Incident is listed as 4/23/2022.

> Review of the electronic medical record reveals that grievant was evaluated by nursing staff on 3/16/2022 re: genitourinary complaints. As part of that assessment, nursing staff checked grievant's blood glucose and discovered that it was elevated at 330. The provider was notified and grievant was treated accordingly. Grievant was subsequently diagnosed with diabetes and a plan of care is in place to address that diagnosis.

> Further chart review reveals that elevated blood glucose levels were detected in blood samples collected in June 2021 and September 2021. In both cases, the blood tests had been ordered by mental health providers. These same providers reviewed the test results but did not specifically address the elevated blood glucose levels displayed therein.

> While grievant's concern re: his recently diagnosed diabetes is acknowledged and understood, there is no indication that the medical providers were made aware of the 2021 blood test results referenced above.  When a medical provider was informed on grievant's elevated blood glucose in March 2022, interventions were ordered to address it. Issues identified while researching this grievance have been referred for administrative review and any corrective action deemed necessary. Grievant is assured that the medical providers will continue to monitor and treat his diabetes as deemed appropriate. Grievant is encouraged to follow the plan of care as instructed and to promptly notify Health Care if he experiences acute adverse symptoms in future and/or if he has any further concerns re: chronic symptoms or issues.

> Grievance resolved.

*Id*. at PageID.124.

At Step III, plaintiff stated,

My blood glucose levels date bac to middle of 2020 were high and by health care being negligent cause me to have more than diabetes by Autonomic Neurepathy "nerve damage" to where my body is always in pain.  When this could have been

resolved if it was caught early on at pre diabetes, blood was to for lab work but never got results of levels.

PageID.123. The grievance appeal was denied at Step III. PageID.122.

In this instance, the MDOC did not reject Grievance 459 for failing to comply with the requirements of PD 03.02.130 ¶ S. Rather, the MDOC waived these requirements and investigated plaintiff's medical history from the existing record. PageID.125. The respondents reviewed blood tests from as early as June 2021, mentioned the actions of the nursing staff, mental health providers, and medical providers, noted that the medical provider was not notified to review the labs ordered by the mental health provider, thanked plaintiff for bringing this matter to their attention, and ultimately determined that the grievance was resolved. PageID.124, 126. Since the MDOC waived the procedural requirements in PD 03.02.130 ¶ S, defendants cannot now assert those requirements as a procedural bar to plaintiff's federal court claims arising from that grievance. As the Sixth Circuit stated in *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010):

> Officials at the Department of Corrections, for reasons of their own, overlooked (or perhaps forgave) this procedural failing and chose to address [the prisoner's] grievance on the merits. That makes a difference. The point of the PLRA exhaustion requirement is to allow prison officials "a fair opportunity" to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court. Requiring inmates to exhaust prison remedies in the manner the State provides— by, say, identifying *all* relevant defendants—not only furthers these objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process.
>
> Yet the equation changes when the State does not enforce its own rules. When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we. In that setting, the State, as the promulgator of the rules, has had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served. When the State nonetheless decides to reject the claim on the merits, who are we to second guess its decision to overlook or forgive its own procedural bar? The rules serve the State's interests: its interest in creating a prison grievance system, its interest in reviewing a complaint before another sovereign

> gets involved and its interest in deciding when to waive or enforce its own rules.
> And the State's decision to review a claim on the merits gives us a warrant to do so
> as well, even when a procedural default might otherwise have resolved the claim.

*Reed-Bey*, 603 F.3d at 324-25 (internal citations omitted).

Here, plaintiff did not direct his grievance at any particular medical provider. However, the MDOC responded to the grievance by reviewing plaintiff's medical history and addressing his claims against the medical providers on the merits.  In short, the MDOC waived the requirements that plaintiff provide the "[d]ates, times, places and names" for Grievance 459. "[T]he State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim."  *Reed-Bey*, 603 F.3d at 325. Accordingly, defendants' motion for summary judgment should be denied.

### III.    Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (ECF No. 38) be **DENIED**.

Dated: October 21, 2025                              /s/ Ray Kent
                                                     RAY KENT
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).